**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1400-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

EXAMPLIAR EXANTUS,

     Defendant-Appellant.

_____

          Submitted September 16, 2019 –
          Decided August 25, 2020

          Before Judges Moynihan and Mitterhoff.

          On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 16-01-0281.

          Joseph E. Krakora, Public Defender, attorney for appellant (John Walter Douard, Assistant Deputy Public Defender, of counsel and on the brief).

          Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Matthew E. Hanley, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Exampliar Exantus appeals from a judgment of conviction that was entered after a jury found him guilty on four counts of fourth-degree bias intimidation, N.J.S.A. 2C:16-1. On appeal, defendant argues the trial court abused its discretion in denying his request for an adjournment for the purpose of procuring expert psychiatric testimony to support a defense of diminished capacity pursuant to N.J.S.A. 2C:4-2. After reviewing the record before us, and in light of the applicable law, we affirm.

We discern the following facts from the record. This case stems from a string of alleged bias intimidation incidents that occurred between April 2013 and August 2015. On August 12, 2013, West Orange Police Sergeant Dennis McCole met with the victim and his mother after being dispatched to their apartment regarding a complaint of harassment. They resided next door to defendant. The victim's mother showed the sergeant a video she had recorded on her cellphone documenting the encounter. Defendant can be heard on the video shouting, "[j]ust like a pig greasy faggot, Spanish shithead, greasy faggot; Spanish shithead, greasy faggot; Spanish shithead, greasy faggot . . . greasy faggot just like a pig; Spanish shit; get out of the way from faggot; stay in your fucking territory greasy." According to the victim, defendant had also yelled similar statements directed at the victim on April 12, 13, 18 and 19, 2013. On

August 17, 2013, McCole was once again dispatched to complainants' apartment, and he and his partner heard a male voice yelling "you Spanish greasy faggot," which appeared to be coming from defendant's apartment. The officers then observed defendant yelling while leaning out of his apartment window. Upon seeing the officers, defendant retreated into his apartment and closed the window. The officers then arrested defendant as he was exiting through the front of the apartment building.

From the limited record before us, it is unclear how the issue of defendant's mental health came before the court. What is clear is that on May 28, 2015, a pretrial judge entered an order directing that defendant be evaluated by a qualified psychiatrist or licensed psychologist to determine whether hospitalization was clinically necessary to perform an examination for defendant's fitness to proceed to trial. After defendant failed to cooperate in attending the court-ordered examination, the judge entered a September 14, 2015 order compelling defendant to appear at his attorney's office on September 29, 2015, for an examination or face a contempt order and remand until he complied.

Defendant complied with the order and on September 29, 2015, Peter D. Paul, Ph.D. evaluated defendant for the purpose of determining defendant's

A-1400-17T4

competency. By way of social history, defendant indicated that he had obtained a degree in electrical engineering technology from the New Jersey Institute of Technology (NJIT) in 1998, but was currently working as a server.[1] He informed the doctor that he chose not to pursue a career in engineering so that he was left more time to pursue his spiritual interests. In that regard, defendant indicated he was an ordained minister of the Jehovah's Witnesses. By way of medical background, although defendant did not provide the doctor with any medical records, defendant supplied him with a detailed history of his past medical treatment that was consistent with the records provided by defense counsel to the judge.[2]

---

[1] Defendant initially attended Rutgers University working towards a degree in electrical engineering but, finding the curriculum "too difficult," dropped out and next attended DeVry Institute, ultimately finishing his studies at NJIT.

[2] According to the records submitted to the judge, defendant had a history of sporadic psychiatric hospitalizations. On February 6, 1996, defendant was admitted to Saint Barnabas Medical Center for ten days, as the dean and school psychologists at his college had requested that he be evaluated for paranoid and delusional behavior. In defendant's discharge summary, the examining doctor noted that he had initially diagnosed defendant with psychosis upon defendant's admission, but that defendant's condition eventually improved and upon his discharge, he "was oriented and was not suffering from either auditory/visual hallucinations or from suicidal/homicidal ideation."

Defendant was next admitted to East Orange General Hospital (E.O.G.H.) for two days beginning on April 28, 2011, after police had arrested defendant

Dr. Paul diagnosed defendant with an unspecified personality disorder, but found defendant fit to stand trial. Specifically, in his report Dr. Paul found that defendant reported at the time of the evaluation, he was not taking any prescribed medications and that he felt fine. Defendant reported that he had been living in West Orange for about six years, and that this was where he became involved in verbal altercations with a juvenile. He understood the purpose of the evaluation was to rule out any mental illness. Defendant articulated his understanding of his legal situation and the charges against him, stating the State claimed he used a racist expression. He defended his actions by saying "[s]omebody calls me a name, so I call them back." Defendant denied ever hearing voices and during the examination was not distracted by internal stimuli. His responses were "mostly relevant, coherent, and focused with no loosening of association."

---

because he was combative with his family. In the corresponding discharge summary, the examining doctor diagnosed defendant with schizophreniform disorder, unspecified state and paranoid type schizophrenia, but also concluded that at the time of defendant's discharge, he was not suicidal or homicidal, and presented no danger of injury to himself or others. These reports also noted that defendant has a history of refusing to take medications.

Defendant was again admitted to E.O.G.H. on August 17, 2013, immediately following his arrest by police, where his examining doctor diagnosed him as having a "mood disorder."

A-1400-17T4

On July 14, 2015, defendant gave timely notice of his intent to invoke a defense of diminished capacity in accordance with N.J.S.A. 2C:4-3(a) and Rule 3:12-1. Defendant, however, never appeared for a psychological evaluation and steadfastly informed his attorney he did not want to pursue a diminished capacity defense.

Subsequently, on January 25, 2016, an Essex County Grand Jury returned Indictment No. 2016-1-0281 charging defendant with eight counts of fourth-degree bias intimidation, N.J.S.A. 2C:16-1. The indictment included one count for the incident that prompted defendant's arrest on August 17, 2013.

Almost two years after providing notice of intent to pursue a diminished capacity defense, and after jury selection was underway, defendant abruptly changed his position and moved for an adjournment to procure an expert to support a diminished capacity defense. On March 1 and 7, 2017, the trial judge held an N.J.R.E. 104 hearing on defendant's motion for an adjournment to permit defendant to raise the diminished capacity defense. At the March 1 hearing, defendant's counsel argued that defendant's mental disorders rendered him unable to form the requisite mental state for bias intimidation. The State countered that defendant's medical history was insufficient for a diminished capacity defense.

6

On March 8, 2017, after allowing the parties an opportunity to brief the issue,[3] the trial judge denied defendant's motion for an adjournment. In an oral opinion, the judge highlighted the most recent medical report finding defendant competent to stand trial. The trial judge noted that defendant had consistently refused to allow his counsel to raise a diminished capacity defense, and noted that to grant defendant's request for an adjournment at this time would "make a mockery of the court," and that the request was otherwise a "dilatory tactic." The judge added that at this late juncture, where the jury had already been selected, there was also no guarantee, based on defendant's prior refusals to be evaluated, that he would submit to a diminished capacity evaluation, or an examination by one of the State's experts.

The judge reasoned that

> especially at this point, as I indicated this matter has been before this court, [this matter] was before another court that had many hearings, before me at least on four occasions and we discussed the case prior to trial. [Raising this defense] was something that defendant had the opportunity to engage based on the evidence presented to the court to be examined by his own expert, and he refused to do so.
> We have completed jury selection, and at this point frankly, based on the information that I have in front of me; based on the conduct of the defendant, there is no guarantee that based on his past behavior that he would,

---

[3] At this time, the jury had already been selected and the case was ongoing.

7

in fact, attend an appointment by his own doctor, as he refused based on the information that was on the record provided to the court repeatedly to do so in the past. And there [are] no assurances that he would submit to an examination by an expert of the State, which the State would be entitled to.

As such, I am denying defendant's request at this juncture.

The trial judge further noted that the Court Rules required defendant to provide the name and information of any testifying doctor thirty days prior to trial, and that defendant failed to do so. The judge found that the requested adjournment was likewise improper because the length of the delay would ultimately be of an indeterminable length, which could inconvenience the litigants in the case.

In addition, the judge found that based on her review of the exhibits provided by defendant, a defense of diminished capacity was not self-evident. The trial judge noted that defendant's treatment in 1996 did not address the issue of diminished capacity and was otherwise too remote to be reliable in the instant matter. The trial judge opined that defendant's request appeared to be a dilatory tactic, given defendant's refusal to submit to examinations that had been arranged by his own counsel. The trial judge added that no reports currently supported defendant's defense, and that it was uncertain whether any supporting

reports would ever exist, or whether any viable defense would even exist after granting the requested adjournment.

The case was tried before a jury on March 8 and 9, 2017. On March 10, 2017, the jury found defendant guilty on counts one, two, seven, and eight of his indictment. On November 3, 2017, the trial judge sentenced defendant to an aggregate of sixty days in jail as a condition of a three-year period of probation, imposing special conditions of mental health treatment and maintenance of employment. On November 6, 2017, the trial judge entered a judgment of conviction and order for commitment.

This appeal ensued. On appeal, defendant presents the following point heading for our review:

> POINT I: THE TRIAL JUDGE ERRED IN DENYING [DEFENDANT'S] MOTION FOR AN ADJOURNMENT TO PERMIT PSYCHIATRIC EVIDENCE THAT HE SUFFERED FROM A MENTAL DISEASE OR DEFECT THAT NEGATED THE REQUISITE STATE OF MIND FOR THE CRIME OF BIAS INTIMIDATION.

Thus, defendant solely argues that the trial judge committed reversible error by denying his motion for an adjournment to be evaluated so he could pursue a diminished capacity defense. Defendant requests that we reverse his convictions

and remand for a new trial, directing to the trial judge ordering that defendant be evaluated to determine if there are grounds for a diminished capacity defense.

"The granting of trial adjournments rests within the sound discretion of the trial court. Absent an abuse of discretion, denial of a request for an adjournment does not constitute reversible error." State v. Smith, 87 N.J. Super. 98, 105 (App. Div. 1965). Additionally, a trial court may decline to allow a defendant to pursue a diminished capacity defense "only when the evidence is viewed in the light most favorable to the defendant, and still no suggestion appears that the defendant's faculties had been so affected as to render the defendant incapable of purposeful and knowing conduct." State v. Galloway, 133 N.J. 631, 648-49 (1993).

N.J.S.A. 2C:16-1(a) defines the crime of bias intimidation and provides, in relevant part,[4]

> [a] person is guilty of the crime of bias intimidation if he commits, attempts to commit, conspires with another to commit, or threatens the immediate commission of an offense specified in chapters 11 through 18 of Title 2C of the New Jersey Statutes; N.J.S.2C:33-4; N.J.S.2C:39-3; N.J.S.2C:39-4 or N.J.S.2C:39-5,

---

[4]  We note that our Supreme Court deemed N.J.S.A. 2C:16-1(a)(3) to be unconstitutionally vague and violative of due process. See State v. Pomianek, 221 N.J. 66, 91-92 (2015).

(1) with a purpose to intimidate an individual or group of individuals because of race, color, religion, gender, disability, sexual orientation, gender identity or expression, national origin, or ethnicity; or

(2) knowing that the conduct constituting the offense would cause an individual or group of individuals to be intimidated because of race, color, religion, gender, disability, sexual orientation, gender identity or expression, national origin, or ethnicity[.]

Additionally, N.J.S.A. 2C:4-2 provides,

[e]vidence that the defendant suffered from a mental disease or defect is admissible whenever it is relevant to prove that the defendant did not have a state of mind which is an element of the offense. In the absence of such evidence, it may be presumed that the defendant had no mental disease or defect which would negate a state of mind which is an element of the offense.

Significantly, this is not a case where defendant was improperly foreclosed from pursuing a late-presented diminished capacity defense. Cf. State v. Lambert, 275 N.J. Super. 125 (App. Div. 1994).

We agree with the trial judge that the record, including Dr. Paul's report, does not necessarily support that defendant has a mental disease or defect that would negate the mens rea for the offense. See Galloway, 133 N.J. at 648-49. In that regard, at the time of defendant's competency examination, he was not delusional and denied ever hearing voices. Dr. Paul documented that defendant's responses were "mostly relevant, coherent, and focused with no

11

loosening of association." Defendant described the incidents as an ongoing dispute with the neighbor that he justified because defendant as a Haitian immigrant had been subjected to racial taunts. Moreover, unlike the circumstances in Galloway, the court here did not preclude defendant from pursuing a defense of diminished capacity. Rather, for years defendant simply and unequivocally chose not to pursue this defense, only changing his position after trial had already commenced. For these reasons, we affirm the trial judge's decision denying defendant's motion for an adjournment so that he could pursue a diminished capacity defense, which the judge exercised in her sound discretion. See Smith, 87 N.J. Super. at 105.

To the extent we have not specifically addressed any remaining arguments raised by the parties, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION